
**Engineering**


**Fire Investigations**


**Environmental Consulting**


**Specialty & Consulting**


**Catastrophe Response**

# Structural Engineering Report

CLENA Investments dba Shoppes of Oakland
8455 West Oakland Park Boulevard
Oakland Park, Florida 33351
Claim Number: ICAT-2010-V-0000006121

**Prepared For:**

ICAT Boulder Claims
3665 Discovery Drive, Suite 301
Boulder, CO 80303
ATTN: Mr. Dwight Powell

EFI Project No. 94204-05576 Supplemental 1

August 26, 2011

**Prepared By:**

EFI Global, Inc.
11602 Lake Underhill Road, Suite 140
Orlando, FL 32825

Emergency 24 Hours: 888.888.2467
www.efiglobal.com


EFI Global
Complex Issues • Solid Solutions


EXHIBIT 5



**EFI Global**
Complex Issues • Solid Solutions

11602 Lake Underhill Road, Suite 140
Orlando, FL 32825
Tel: 321-251-9091
Tel: 800-776-0289
Fax: 321-251-9099
www.efiglobal.com

August 26, 2011

ICAT Boulder Claims
c/o: Mr. Dwight Powell
3665 Discovery Drive, Suite 301
Boulder, CO 80303

RE: **Structural Engineering Report**
**Supplemental Report One**
CLENA Investments dba Shoppes of Oakland
8455 West Oakland Park Boulevard
Oakland Park, Florida 33351

| | |
|---|---|
| Date of Loss: | October 24, 2005 |
| Claim No.: | ICAT-2010-V-0000006121 |
| EFI File No.: | 94204-05576 |

On April 6, 2010, Richard N. Harb, P.E., conducted an origin and cause damage investigation at the subject referenced loss location. Specifically, EFI Global Inc. (EFI) was asked to inspect the roof and interior at the subject commercial building located at 8455 West Oakland Park Boulevard in Oakland Park, Florida. EFI completed the investigation and produced a report dated April 24, 2011, describing the findings of the investigation.

On August 04, 2011, EFI received additional documentation regarding this matter from the attorney, Mr. Travis Watson of Phelps Dunbar LLP. EFI was asked to review the documentation and provide an opinion whether the additional information would affect the findings described in EFI's April 24, 2011, report. The conclusions contained herein are based on information available to date. This written report should be read in full.

Insured: CLENA Investments dba Shoppes of Oakland
Claim No: ICAT-2010-V-0000006121
EFI Global No: 94204-05576
August 26, 2011

## ENCLOSURES

- Appendix A- Reroofing permit

## BACKGROUND INFORMATION

Among the documentation provided for EFI's review, the following documents will be referred to in the remainder of this report:

- An engineering report by VLC One, Inc., dated August 01, 2011, (VLC report).
- A roof repair invoice by No Drip Roofing Inc., dated July 23, 2005, in the amount of $700 (Inv#1)
- A roof repair invoice by No Drip Roofing Inc., dated September 27, 2005, in the amount of $575 (Inv#2)
- A roof repair invoice by No Drip Roofing Inc., dated April 28, 2006, in the amount of $375 (Inv#3)
- A roof repair invoice by No Drip Roofing Inc., dated July 27, 2006, in the amount of $375 (Inv#4)
- A roof repair invoice by Go Green Design & Remodeling, dated March 10, 2010, in the amount of $425 (Inv#5)
- A roof repair invoice by Go Green Design & Remodeling, dated October 18, 2010, in the amount of $3,300 (Inv#6)
- A letter from Rauch, Weaver, Norfleet, Kurtz, & Co., dated September 10, 2004, with photographic attachment (D1).
- A letter from Rauch, Weaver, Norfleet, Kurtz, & Co., dated April 21, 2006, with photographic attachment (D2).
- A letter from Rauch, Weaver, Norfleet, Kurtz, & Co., dated September 27, 2006, (D3).
- Deposition of Selva Rodriguez dated June 27, 2011, (D4).
- Deposition of Marylou Adams dated June 20, 2011, (D5).

EFI also researched the re-roofing permit records of Broward County and the City of Sunrise. The re-roofing permit appended to this report is the last re-roofing performed, and indicates the roof was replaced between the dates of September 7, 1993, (the date of permit issuance, permit number 93-4506), and October 3, 1993, (the date of final inspection approval).


EFI Global

Insured: CLENA Investments dba Shoppes of Oakland
Claim No: ICAT-2010-V-0000006121
EFI Global No: 94204-05576
August 26, 2011

## DISCUSSION

Upon the review of the VLC report, EFI noted the following:

1. Based on research done by EFI, the roof appeared to be about 18 years old, and was approximately 12 years old at the time of Hurricane Wilma. The extensive deterioration in the roof as observed during EFI's investigation is consistent with the age of the roof.

2. The presence of a parapet wall on the roof partially shields the roof surface from the direct force of the wind, and causes the wind to flow above the building. This effect also reduced the wind pressure on air conditioning units due to the change in direction of the wind that the parapet wall caused. EFI observed deterioration around the air conditioning units. The observed deterioration is not the result of wind uplift pressured on the air conditioning units, as the wind uplift pressures are minimal in the field of the roof.

3. The VLC report states under bullet point #2 that "...*most of the air condensing units exhibit cracks, holes, ruptures, deterioration around the concrete pads*". EFI agrees with this statement, that water can infiltrate through holes caused by the deterioration cracks in the roof membrane. With the extensive level of deterioration and cracking in the roof membrane observed, water can easily infiltrate and cause interior leaks. The fact that water has infiltrated a roof that is deteriorated is not an indication of wind damage.

4. The VLC report also states under bullet point #2: "*This observation is corroborated by the levels of moisture content (between 60 and 90% RH) measured by Mr. Ivan Maldonado, the metal roof deck corrosion and the blistering, bubbling, soft spots, and water ponds all around the roof area*". EFI observed locations of water ponding all around the roof area. The roof was 11 years old at the time of Hurricane Frances, and 12 years old at the time of Hurricane Wilma. The premature deterioration of the roof is caused by the extensive water ponding, and is the result of poor drainage. Also, blistering, bubbling, soft spots, and water ponding are typically associated with roof deterioration, and not with wind damage.

5. In bullet point #3, the VLC report indicates the following: "*Also, the metal flashing at the roof angle is deteriorated and almost destroyed in many spots. The roofing membrane material is cracked, broken, split or missing around the parapet wall perimeter (at least 70%). Such damages are common during high winds when flying debris would repeatedly hit the parapet wall*". It is widely known that the deterioration of metals is caused



Insured: CLENA Investments dba Shoppes of Oakland
Claim No: ICAT-2010-V-0000006121
EFI Global No: 94204-05576
August 26, 2011

by the exposure to moisture and not by wind damage. Also, the roof membrane stops at the bottom of the parapet walls. The cracking observed in the parapet walls, as illustrated in photograph #47 of EFI's April 24, 2011, report, is along the exterior wall finish, and is caused by expansion and contraction due to temperature differentials. These cracks do not affect the water proof-ability of the roof, since the roof membrane stops at the bottom of the wall

6. Under bullet point #4, the VLC report states that "It is unclear which small recent patches EFIG is referring to since there are numerous patches, one of which, on the SW corner of the roof, is about 100 square feet alone (approximately 16' x 6'). It seems that EFIG is associating only the patches (and just few) on the field of the roof to the wind damage while is conveniently omitting the deterioration of the parapet wall perimeter flashing and membrane". Based on the evidence observed during EFI's inspection, patches associated with wind damage is where tears in the roof membrane were observed. The large patches observed on the roof are the result of roof deterioration due to water ponding. Some of these patches were performed prior to the date of loss of Hurricane Wilma, as documented in Inv#1 and Inv#2. Other leaks were repaired after Hurricane Wilma, as documented in Inv#3 to Inv#6.

7. The blistering observed in the roof membrane at multiple locations is caused by entrapped air and water under the roof membrane. Due to long term exposure to heat, the entrapped air heats up and expands, causing the observed bubbles. This is typically observed on deteriorated roofs, where the deterioration caused by the water ponding allowed the air and water to infiltrate and the bubbling to occur. Entrapped air is not usually associated with wind damage, as the VLC report states under bullet point #5, since wind borne debris causes the roof membrane to tear and entrapped air to escape.

8. Under bullet point #6, the VLC report states that "Without detailed, penetrative and/or destructive investigative methods, EFIG's findings of such minute percentage of wind damage are quite impressive, but mostly questionable". Destructive testing would determine the percentage of water content of the roof membrane, and is not an indicative of cause of damage. Whether destructive testing is performed on the roof or not, the facts and evidence indicate that the roof is deteriorated and leaked for many years. The inability of the VLC report to distinguish between drying cracks caused by deterioration and cracks caused by wind borne debris puts a question mark around the technical expertise of the author. Drying crack or alligatoring cracks are widely known and documented throughout



Insured: CLENA Investments dba Shoppes of Oakland
Claim No: ICAT-2010-V-0000006121
EFI Global No: 94204-05576
August 26, 2011

the forensic engineering community, and very well documented in engineering literature.

9. Multiple contradictions in the VLC report exist. In the conclusion section of the report, the first bullet point, *"It is my professional opinion that the existing damages of the roof and, in turn, the interior leaks, are likely due to high winds activity in recent years"*. Such a conclusion is difficult to be justified when at the same time the author admits the roof is deteriorated (see bullet points 3, 4, and 5 above). The VLC report does not draw a clear line between deterioration and damage caused by wind.

10. The VLC report states "..., *it is my personal opinion that the probability that hurricane Wilma affected the subject roof is much higher than that of hurricane Francis"*. Probabilities are not evidence of wind damage. Any conclusion based on probabilities do not have any engineering and forensic significance. All the opinions rendered in the EFI's April 24, 2011, report are based on physical evidence. The VLC report also states that Hurricane Wilma caused $20.6 billion of damages in the State of Florida. This is not an indication that Hurricane Wilma has caused any damage to the property under investigation.

Upon review of other documents pertaining to the property under investigation, the following comments can be noted:

- The evidence indicates the roof was leaking prior to Hurricane Wilma. No Drip Roofing Inc. repaired two (2) leaks, as shown in Inv#1 on July 23, 2005, and three (3) leaks on September 27, 2005, as shown in Inv#2.
- There is evidence of trees falling on the roof during Hurricane Frances in 2004, as indicated in D1.
- The reviewed photographs in D2 do not show trees falling on the roof of the building under investigation, but into the canal located west of the building.
- D3 indicates the building suffered no structural damage caused by any recent hurricanes.
- Ms. Selva Rodriguez indicated the roof leaked during Hurricane Frances in D4, and two (2) trees fell on the roof during Hurricane Frances.
- The property manager, Ms. Marylou Adams indicated in D5 that multiple repairs were done on the roof prior to Hurricane Wilma. Ms Adams also indicated not seeing any missing roof mansard tiles on October 25, 2005, one day after Hurricane Wilma. Ms. Adams also indicated that multiple roof repairs occurred after Hurricane Wilma.



Page 5 of 7

*Insured: CLENA Investments dba Shoppes of Oakland*
*Claim No: ICAT-2010-V-0000006121*
*EFI Global No: 94204-05576*
*August 26, 2011*

## RESULTS OF THE REVIEW (Conclusions)

Based on EFI Global's work, the following has been determined:

- The roof under investigation is deteriorated and leaked since Hurricane Frances in 2004. No evidence indicates that the roof under investigation was damaged by Hurricane Wilma.
- The wind damage on the roof has been repaired, and is estimated to be about 10 square feet, as stated in EFI's April 24, 2011, report. Based on the physical evidence, EFI cannot associate the wind damage with a particular storm event. However, based on the review of the photographs taken right after the storms in D1 and D2, more evidence attributes the cause of wind damage to Hurricane Frances, than to Hurricane Wilma.
- The fact that water infiltration inside the roof and into the commercial units occurred after Hurricane Wilma, is not an indication that Hurricane Wilma is the origin and cause of the leaks. Wind driven rain infiltrated through the already existing cracks caused by deterioration due to water ponding and caused the interior damage.
- Upon review of all documentation, EFI confirms the findings of its April 24, 2011, report.
- EFI does not agree with the findings of the VLC report, as the findings are not based on physical evidence observed at the site. The VLC report lacks the knowledge of forensic engineering and bases its findings on probabilities.

## QUALIFICATIONS

The information presented in this report addressed the limited objectives related to the evaluation of the CLENA Investments dba Shoppes of Oakland. This report only describes the conditions present at the time of our evaluation. It is not intended to fully delineate or document every defect or deficiency throughout the subject property. If any additional information is encountered which relates to this evaluation, EFI reserves the right to alter the options contained in this report. In some cases, additional studies may be warranted to fully evaluate concerns noted.

The findings noted herein do not constitute a scope of work for repair or offer of repair. Detailed design documents should be prepared to accurately reflect the scope of any repair work and competitive bids be obtained to determine actual repair costs.

EFI Global

*Insured: CLENA Investments dba Shoppes of Oakland*
*Claim No: ICAT-2010-V-0000006121*
*EFI Global No: 94204-05576*
*August 26, 2011*

Our services have been performed using that degree of skill and care ordinarily exercised under similar conditions by reputable members of EFI's profession practicing in the same or similar locality at the time of performance.

Any verbal statements made before, during, or after the course of the investigation were made as a courtesy only and are not considered a part of this report.

**CLOSING**

EFI appreciates this opportunity to provide consulting services to Boulder Claims in this matter. Please contact us should any questions arise concerning this report, or if we may be of further assistance.

Sincerely,                                   Reviewed by:

Richard N. Harb, P.E.                        Michael W. Smith, P.E.
Senior Structural Engineer                   District Manager
Boynton Beach, Florida                       Orlando, Florida
Florida Professional Engineer                FL P.E. # 65202
License No.: PE 65214                        Michael_Smith@efiglobal.com

/kc
Enclosure



**CITY OF SUNRISE**
**BUILDING DEPT.**
3801 N. UNIVERSITY DR. #401
TEL. 572-2354    FAX 572-2357
**BUILDING PERMIT APPLICATION**

58517

PERMIT No. 93-4506

9-7-93

"NOTICE: In addition to the requirements of this PERMIT, there may be additional restrictions applicable to this property that may be found in the public records of this County, and there may be additional permits required from other governmental entities such as water management districts, state agencies, or federal agencies."

DATE ____

FOLIO NUMBER: 9121 03 016

SEC ____ TWP ____ RGE ____ ZONE ____
OWNER'S: Lipin Corp
OWNER'S ADDRESS: 8455 W. Oakland Pk Blvd
CITY: Sunrise    PHONE ____
CONTRACTING FIRM: Lewis Roofing
MAIL ADDRESS: 1901 NW 27 St.
CITY: Ft. Lauderdale    PHONE ____
JOB ADDRESS: 8455 W. Oakland Pk Blvd
LOT: Track    BLOCK 7
SECTION: Spring Tree 75 section 49 B
PRESENT USE: Office
PROPOSED USE: ____
NUMBER OF STORES ____  OFFICES ____
FAMILIES ____ BEDROOMS ____ BATHS ____
TYPE OF WORK: ADD ☐  NEW ☐  ALTER ☐  REPAIR ☐
DESCRIBE: Reroof – Base sheet, 3 ply fiberglass ply

APPLICATION is hereby made to obtain a permit to do the work and installations as herein indicated. I certify that no work or installation has been started prior to the issuance of said permit and that all work will be performed to meet the standards of all laws regulating construction in BROWARD COUNTY and the CITY OF SUNRISE whether specified in this application and accompanying plans or not. I understand that a separate permit must be secured for ELECTRICAL, PLUMBING, SIGNS, WELLS, FURNACES, BOILERS, HEATERS, TANKS, AIR CONDITIONERS.

CONTRACTOR
Certificate of Competency No. 78-554 R
State Registration No. KCO0 23041

I certify that all work will be done to comply to all FEDERAL, STATE, COUNTY and no violation exist on this property.

SIGNATURE: Willie Lewis

STATE OF FLORIDA
COUNTY OF BROWARD
Subscribed & Sworn before me this ____ day of ____ , 19 ____

Notary Public

This permit is not valid until signed by an authorized representative of the SUNRISE BUILDING DEPT. & all fees are paid.

Structural Plans Approved By ____
LICENSE & INSURANCE Approved By ____

Residential ____    Commercial ____
Square Feet: 100 sq    Type of const. Reroof
Cubic Feet:    Occupancy ____
 1 & 2 Story 10,000
 3 & 4 Story ____
 5 Story & up ____

1992 GAFR

Estimated Value    Fee

Principal Bldg.    $ ____    $ ____
B.R.A. Surcharge    ____    1.70
Radon Trust Fund    ____    5.45
Insulation
Energy
Roof    17,000.00    ____
Addition    ____    151.00
Alteration
Pool
Fence
Screen/Pool Enc.
Concrete Slab
Awning/Tent
Sign
Other

TOTAL AMOUNT DUE $  158.95  43.70

"FAILURE TO COMPLY WITH THE MECHANICS' LIEN LAW CAN RESULT IN THE PROPERTY OWNER PAYING TWICE FOR BUILDING IMPROVEMENTS."

ALL IMPACT FEES, SEWER CONNECTION CHARGES AND METER FEES SHALL BE PAID PRIOR TO RECEIVING PERMIT.

Remarks: Existing bar, I have Jr. mix existing

| ELEVATION | PROPOSED | AS BUILT |
|---|---|---|
| Finish Floor | | |
| Crown of Road | | |

All Elevations N.G.V.D.

10193  4C        C\. - OF SUNRISE                                Mtn

BUILDING PERMIT NO.: 93-4506  TIME: 1:44     DATE: 10-1-93

LOT: TR 7            BLOCK: _____   SEC.: SPTR

STREET ADDRESS: 8455 W OPB

CONTRACTOR: Lincoln Roofing

TYPE OF INSPECTION: Final Roof

DATE APPROVED: 10/4/93    DATE REJECTED: _____

REASON FOR REJECTION: _____

FINE: $ _____                                   _A. S._
                                                 INSPECTOR