# VLC ONE, INC.

5365 NW 126 DRIVE • CORAL SPRINGS, FLORIDA • 33076
CELL: 954-864-2775 • PHONE: 954-575-7108 • E-MAIL: VANDIN@YAHOO.COM

August 1, 2011

Howard Levine, Esquire
1560 Lenox Avenue # 307
Miami Beach, FL 33139-3391

RE: **Claim Number: ICAT-2010-V-0000006121**
Clena Investments – Shoppes of Oakland
Property Address: 8455 West Oakland Park Boulevard, Oakland Park, FL 33351
Independent Structural Evaluation of Roof Damage

Dear Mr. Levine:

As per your request, I have reviewed the following documentation regarding Shoppes of Oakland structural damages:

1. **Structural Investigation: Origin and cause of Damage – Hurricane Wilma**, dated April 24, 2010 and prepared by EFI Global (EFIG)
2. **Cost Estimate for Restoration/Service/Remodel** (including amended version) dated February 25, 2010 and prepared by Freedom Adjusters, LLC (FA)
3. **Photos with moisture readings** taken by Ivan Maldonado in February 2010

On July 28, 2011, I've conducted my own site visit to assess firsthand the structural and esthetic condition of the subject property (see attached photos in Appendix A) and I am please to submit below my independent evaluation, conclusions and recommendations regarding roof structural damages and concerns.

The report prepared by EFIG is well documented in terms of references to applicable codes and standards as well as meteorological data associated with Hurricane Wilma. However, the investigations, conclusions and recommendations in the report raise several objections as follows:

1. One of the EFIG's statements in the preamble of the Analysis section reads: "*In the case of the damaged building being investigated, the roof is estimated to be the*


EXHIBIT 6

1 of 5

*original installation, which makes it approximately 26 years old"*. To my knowledge there are no record drawings, data or witnesses to sustain such allegation and therefore, EFIG's assumption is merely speculative. Moreover, the report is prejudiced on this assumption and focused on the *"normal wear and tear"* of an *"expired roof, over its life expectancy of 20 years"*.

It is my professional opinion that without proper documentation as irrefutable evidence to attest the age of the roof any references to the *"original installation"* should be dismissed in any structural investigation associated with the subject property.

2. Under the direct damage of wind on flat roof, EFIG stated that *"According to the 2007 Florida Building Code, the strongest winds experienced on a roof occur at the corners of the roof. The edges, ridges, and hips of a roof are also subject to strong winds. The field of the roof is subjected to the least wind uplift forces"*. While I totally concur with these general statements, I am surprised that EFIG doesn't refer specifically to the subject roof which has a parapet wall all around the perimeter. Also, in the case of an empty flat roof it is very true that the field of the roof is subjected to the least wind uplift forces. However, the damaged roof under investigation has twelve (12) roof-top mount air condensing units along with adjacent plenums. These units are around three (3) feet tall and any hurricane winds could have major impact on them. Being anchored to the roof (on concrete pads) and sealed around with the roofing membrane, any torquing, dislocation, uplift, movement, etc. of the air condensing units would result in roof damages in the area.

Most of the air condensing units exhibit cracks, holes, ruptures, deterioration around the concrete pads. It is obviously that water could easily infiltrate in these affected areas and penetrate underneath the roofing membrane and below. This observation is corroborated by the levels of moisture content (between 60 and 90% RH) measured by Mr. Ivan Maldonado, the metal roof deck corrosion and the blistering, bubbling, soft spots, and water ponds all around the roof area.

3. One of the observations noted by EFIG is that *"Cracking in the concrete block parapet walls was also observed"*. Unfortunately, no further discussions regarding this issue are found in the report. The parapet wall all around the perimeter exhibits multiple and severe cracking along with some patched areas. Also, the metal flashing at the roof angle is deteriorated and almost destroyed in many spots. The roofing membrane material is cracked, broken, split or missing around the parapet wall perimeter (at least 70%). Such damages are common during high winds when flying debris would repeatedly hit the parapet wall. Usually, after a hurricane event, on this type of flat roof with surrounding parapet wall, large quantities of debris are found accumulated on the roof at the wall edge. It is well known and proven that any small object (i.e. rock, pebble, twig, etc.) could become airborne projectile at a category 2 or up winds hurricane.

It is my professional opinion corroborated with common sense that during Hurricanes such Katrina, Frances and Wilma, the parapet wall, the flashing and the edge membrane on this roof could have been substantially affected by ubiquitous flying debris.

4. Under the observations and analysis, EFIG states that *"The small recent patches observed on the roof are consistent with windborne debris damage....The wind damage is estimated to be about 10 square feet"*. It is unclear which small recent patches EFIG is referring to since there are numerous patches, one of which, on the SW corner of the roof, is about 100 square feet alone (approximately 16' x 6'). It seems that EFIG is associating only the patches (and just few) on the field of the roof to the wind damage while is conveniently omitting the deterioration of the parapet wall perimeter flashing and membrane.

5. Another opinion in the EFIG's report, under the observations and analysis, is that *"The bubbling of the roof membrane is caused by entrapped air or moisture or both. The bubbling of the roof membrane is not consistent with wind damage"*. Such assertions are quite questionable, since the water and air infiltration under the roof membrane could be an indirect cause of wind damage. In this case, high winds damages (cracking, breaking, splitting, etc. of the membrane) around the perimeter wall and air condensing units are the perfect precursors for the water intrusion all around the roof area.

This cause would also explain the water ponding, soft spots, loss of the roof pitch, metal deck corrosion and interior leaks which are consistent with continuous water and air intrusion below the membrane.

6. EFIG's report concludes that *"It is EFI Global's professional opinion that the roof under investigation is an expired roof has exceeded its useful life expectancy"*. Besides the minor grammatical error, this statement is again based on the unverifiable supposition that the roof is over 25 years old.

Another conclusion in the report is that *"The wind damage on the roof was observed to have been repaired"*. As of July 28, 2011 there are still major issues with this roof that were very likely caused by wind damage. However, EFIG either overlooked or ignored them. It is quite intriguing that for an almost 10,000 square feet roof, with parapet wall and several roof-top air condensing units installed, EFIG pinpointed to only 10 square feet of actual wind damage or 0.1% of the total roof area!

Without detailed, penetrative and/or destructive investigative methods, EFIG's findings of such minute percentage of wind damage are quite impressive, but mostly questionable.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the comprehensive evaluation of the above listed documentation and on my personal site investigation, my professional opinion and recommendations are as follows:

- It is my professional opinion that the existing damages of the roof and, in turn, the interior leaks, are likely due to high winds activity in recent years. The effect of such winds on the parapet wall flashing and edge roof membrane and also on the air plenums and air condensing units created the proper conditions for water and air intrusion under the roof membrane. Continuous water and air infiltration has been undermining the membrane, metal deck and overall roof structure.

- At this time, without any documentation, the exact extent of destruction on this roof immediately after a category 2 or up hurricane and the ongoing deterioration thereafter would be quite impossible to estimate. However, the initial cause of damage due to high winds and windborne debris could not be ruled out.

- It is difficult to isolate the roof damages to a particular hurricane event in the last few years, either Katrina, Frances, Irene, Wilma, etc. However, based on several factors and recorded data (presented in Table 1 below) that I researched, it is my personal opinion that the probability that hurricane Wilma affected the subject roof is much higher than that of hurricane Francis.

**Table 1 – Facts Comparison between Hurricanes FRANCES and WILMA**

| No. | Data/Fact | Source | Hurricane FRANCES | Hurricane WILMA |
|---|---|---|---|---|
| 1 | Storm strength at landfall in South Florida | NHC | Category 2 | Category 3 |
| 2 | Winds Gusts in Florida | NHC | 87 MPH | 135 MPH |
| 3 | Damage Costs in Florida | FEMA | $2.1 billion | $20.6 billion |
| 4 | Most Affected Areas | FEMA | Florida, Georgia | Florida |
| 5 | Mobile Homes Affected in Broward County | FLHSMV | None | 800 |
| 6 | Conversation with eye witness from subject property | | No roof damage after the storm was observed | Roof damages were observed after the storm |

- Based on the factual data presented in Table 1 above, one could conclude that it is highly probable that the wind damages on the subject roof are associated with Hurricane Wilma rather than Frances.

- The building flat roof and parapet wall have extensive signs of sagging, bubbling and cracking of membrane. The roof lost its pitch and there is standing water all along the

west side and in few other areas. The constant water infiltration over the last 5-6 years has undermined the condition of the metal deck, insulation and membrane. The existing condition of the roof is perilous to the overall building structure and it is recommended that the entire roof system (including the metal deck) be replaced in kind.

- Prior to installation of a new roofing system all roof-mount air condensing units and attached air plenums need to be detached and reinstalled after the new roof is ready.

- The estimates for both the interior and exterior repairs should not be based on a new construction type building. Any cost estimate should consider the associated costs for demolition, removal and disposal of existing materials for this existing structure.

- Due to the stringent time constraints in preparation of this report, a detailed breakdown cost estimate could not be prepared. The values presented below are based on my knowledge and expertise, similar projects quotations, RS Means catalogue and internet research.

It is my professional opinion that costs for the roof replacement and interior structural remedial activities could be as follows:

## Exterior Structural Rehabilitation

| | |
|---|---|
| ➤ Complete Roof System Replacement (9,800 sqft): | $157,000.00 |
| ➤ Parapet Wall Restoring: | $ 26,000.00 |
| ➤ A/C Units Detachment and Reinstallation: | $ 23,000.00 |
| ➤ Cleaning, Debris Disposal, Recycling: | $ 10,000.00 |
| **Subtotal:** | **$216,000.00** |

## Interior Structural and Cosmetic Rehabilitation

| | |
|---|---|
| ➤ Ceiling Tiles Replacement: | $ 20,000.00 |
| ➤ Walls and Ceiling Repairs: | $ 10,000.00 |
| ➤ Painting: | $ 5,000.00 |
| ➤ Miscellaneous Electrical, Plumbing, HVAC Repairs: | $ 15,000.00 |
| ➤ Cleaning, Debris Disposal, Recycling: | $ 2,000.00 |
| **Subtotal:** | **$ 52,000.00** |
| **SUB-TOTAL:** | **$268,000.00** |
| ➤ Construction Contingency (5%): | $ 13,400.00 |
| **TOTAL COST ESTIMATE:** | **$281,400.00** |

All these activities are critical and required for overall building structural rehabilitation and esthetic renovation. The above values should be considered as the Engineer's Opinion of Probable Construction Cost (EOPCC) and not an exact quotation for work to be performed.

Please feel free to contact me should you have any questions or comments.

Very truly yours,

Vandin Calitu, P.E.
Florida PE No. 57982