## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 10-cv-62028-SCOLA

CLENA INVESTMENTS, INC.,

    Plaintiff,
vs.

XL SPECIALTY INSURANCE CO.,

    Defendant.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the Motion for Summary Judgment [ECF No. 51], filed by Defendant XL Specialty Insurance Company ("XL"). The Court has carefully considered the parties' written submissions and the arguments made at the hearing held on March 22, 2012. For the reasons that follow, the Court concludes that there is no genuine issue of material fact and that XL is entitled to judgment as a matter of law.

### Introduction

Plaintiff Clena Investments, Inc. ("Clena") filed this lawsuit against XL to obtain payment on an insurance claim for damage allegedly sustained to its commercial building during Hurricane Wilma in October 2005. The present dispute concerns whether Clena complied with the insurance policy's loss-notice condition when it filed a claim some four years after the storm passed through South Florida. XL seeks summary judgment on the ground that Clena's notice was too late as a matter of law. Clena, in turn, argues that whether notice was timely presents a question of fact under Florida law, which the Court may not resolve at the summary judgment stage, and further that late notice only creates a presumption of prejudice to the insurer, which the insured is entitled to rebut. Clena submits that there is a disputed question of fact as to timely notice and prejudice, but XL disagrees.

**Statement of Undisputed Facts**

Clena owns a shopping plaza in Sunrise, Florida, located at 8455 West Oakland Park Boulevard. From September 28, 2005 to September 28, 2006, Clena's property was insured under a commercial policy issued by XL. The policy provided coverage for damage caused by wind, hail, and wind-driven rain occurring during the policy period. Any claim under the policy was subject to a $24,882 insurance deductible. The policy also contained the following loss-notice provision requiring Clena to inform XL, "as soon as practicable," of any occurrence that *could* lead to an insurance claim:

> **Article XV    Notice of Loss**
>
> You shall, as soon as practicable, report in writing to [XL] every loss, damage or occurrence which may give rise to a claim under this Policy.

*See* Policy at 10 [ECF No. 5-3].

Hurricane Wilma passed through South Florida on October 24, 2005, causing substantial damage to property throughout the region. On February 19, 2010, Clena first notified XL of its Hurricane Wilma claim, some four years after the storm hit South Florida. The proof of loss submitted by Clena put the amount of damage caused by Hurricane Wilma at $224,779.18. Thereafter, XL retained an independent adjuster and structural engineer to investigate the claim.

On April 6, 2010, the structural engineer, Richard Harb, inspected the subject property and concluded that a significant portion of the damage was not caused directly by wind or hail, but rather was the result of faulty installation, long term deterioration, inadequate maintenance, and normal wear and tear. Harb also concluded that some roof damage was indicative of damage occasioned by wind or wind-blown debris; however, Harb was not able to determine when the wind damage occurred, nor to which wind event or events, including hurricanes and tropical storms, the damage could be attributed. Harb Aff. ¶ 6 [ECF No. 40-1].

Clena's engineer, Vandin Calitu, also prepared an expert report in which he concluded that "without any documentation, the exact extent of destruction on this roof immediately after a category 2 or up hurricane and the ongoing deterioration thereafter would be quite impossible to estimate." *See* Calitu Report at 4 [ECF No. 60-2]. Calitu further found that "[i]t is difficult to isolate the roof damages to a particular hurricane event in the last few years, either Katrina, Frances, Irene, Wilma, etc.," although in his "personal opinion, the probability that hurricane

Wilma affected the subject roof is much higher than that of hurricane Francis [sic]." *See id.* He reached this conclusion by comparing the relative strength of Hurricanes Frances and Wilma, the latter having been a more powerful and destructive storm. The record does not reflect that he did any like comparison between Hurricane Wilma and other storms, such as Hurricanes Katrina and Irene, both of which predated Wilma and occurred outside the policy period.

During deposition, Calitu testified that he was not able to form a professional opinion about whether the damage to the roof looks the same today as just after Hurricane Wilma, noting that "I wasn't there right after Wilma" and "I cannot form an opinion because, again, it's only based on speculation." *See* Calitu Dep. [ECF No. 50-1]. Calitu further explained that the only way to determine with certainty the extent of damage caused by one wind event or another "is to actually have the facts right after the hurricane." *See id.* at 59. The undisputed facts also showed that even assuming damage could be traced to Hurricane Wilma, all reasonable steps to protect the subject building from further damage after the storm were not taken. *See* Clena's Resp. to XL's Facts at ¶¶ 50-51 [ECF No. 65]; Calitu Dep. at 59 [ECF No. 50-1]. Thus, the damage to the subject building worsened over time because the initial damage went unrepaired for several years. *See* Clena's Resp. to XL's Facts at ¶¶ 50-51 [ECF No. 65]; Calitu Dep. at 59 [ECF No. 50-1].

Clena's corporate representative testified to constructive knowledge of the alleged Hurricane Wilma claim at least by September 22, 2008, when Clena executed a subsequent contract for insurance. That insurance application was completed by Clena's property manager at the time, who the corporate representative described as unqualified and "very irresponsible to do anything there at all." Vilarchao Dep. at 35 [ECF No. 46-1]. The corporate representative testified that Clena "should have" reported its Hurricane Wilma loss at the time of the 2008 policy application and that it failed to do so because, again, the manager "was very unqualified to handle it." *See id.* at 37.

In view of these circumstances, XL denied Clena's insurance claim for failure to timely report the loss, as required by the policy's loss-notice provision. After XL denied the claim, Clena filed this lawsuit, asserting breach of the insurance contract. The issue presently before the Court is whether XL is entitled to summary judgment on its late-notice defense.

## Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "Summary judgment is particularly suited to cases of insurance coverage because the interpretation of a written contract is a matter of law to be decided by the court." *Int'l Ship Repair & Marine Servs., Inc. v. N. Assur. Co. of Am.*, 2011 WL 5877505, at *4 (M.D. Fla. Nov. 23, 2011).

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (citation omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [ ] must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586. "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Board of Regents of Univ. of Georgia*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011).

## Legal Analysis

In view of the undisputed factual record in this case, XL is entitled to summary judgment on its late-notice defense.

"Under Florida law, the insured's failure to provide 'timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy.'" *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac.Ins. Co., Ltd.*, 2012 WL 266438, at *2 (S.D. Fla.

Jan. 30, 2012) (quoting *Ideal Mut. Ins. Co. v. Waldrep*, 400 So.2d 782, 785 (Fla. 3d DCA 1981)). Although one Florida appellate court recently held that the mere fact of untimely notice was itself sufficient to warrant summary judgment in the insurer's favor, *see Kroener v. Fla. Ins. Gaur. Ass'n*, 63 So. 3d 914, 916 (Fla. 4th DCA 2011), most Florida cases appear to treat the issue in two step fashion, *see Banta Props., Inc. v. Arch Specialty Ins. Co.*, 2011 WL 5928578, at *3 (S.D. Fla. Nov. 23, 2011).

Under this approach, consideration must first be given to whether the insured's notice was untimely. *See Kendall Lakes*, 2012 WL 266438, at *2; *Ideal Mut. Ins. Co.*, 400 So.2d at 785; *Laster v. U. S. Fid. & Guar. Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974). If so, then prejudice to the insurer is presumed. *See Kendall Lakes*, 2012 WL 266438, at *2. At that point, the insured can only prevail by rebutting the presumption and demonstrating that no prejudice in fact occurred. *See Deese v. Hartford Accid. & Indem. Co.*, 205 So. 2d 328, 332 (Fla. 1st DCA 1967); *Kendall Lakes*, 2012 WL 266438, at *2. "The insured's burden is to show by competent evidence that the insurer has not been substantially prejudiced by the lack of notice or the untimely notice." *Allstate Fire & Cas. Ins. Co. v. Duong Thanh Ho*, 2012 WL 442980, at *7 (S.D. Fla. Feb. 10, 2012); *see also Ro-Ro Enters., Inc. v. State Farm Fire & Cas. Co.*, 1994 WL 16782171, at *4 (S.D. Fla. June 22, 1994). The insured may satisfy this burden by showing, for example, that "an investigation conducted immediately following the [occurrence] would not have disclosed anything materially different from that disclosed by the delayed investigation[.]" *See Niesz v. Albright*, 217 So. 2d 606, 608 (Fla. 4th DCA 1969).

In this case, the policy provision in question required the insured to tender timely notice of "every loss, damage or occurrence which may give rise to a claim." *See* Policy at 10 [ECF No. 5-3]. The provision required such notice to be given "as soon as practicable." *See id.* "A policy provision relating to the time when notice of an [occurrence] must be given, and containing language such as, 'as soon as practicable,' means notice given with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of the particular case." *Laster*, 293 So. 2d at 86 (citation omitted).

In many cases, therefore, whether notice is timely will be a question of fact for the jury. *See Banta Props.*, 2011 WL 5928578, at *3; *Duong Thanh Ho*, 2012 WL 442980, at *6; *Niesz*, 217 So. 2d at 608. On the other hand, when the undisputed factual record establishes notice is so

late that no reasonable juror could find it timely, Florida courts will deem the notice untimely as a matter of law. *See Kendall Lakes*, 2012 WL 266438, at *2; *see also Midland Nat'l Ins. Co. v. Watson*, 188 So. 2d 403, 405 (Fla. 3d DCA 1966) (two-year delay untimely as matter of law).

Turning to the facts of this case, the Court finds Clena's notice to XL untimely as a matter of law. Clena waited more than four years, until February 2010, before tendering any notice to XL.[1] Florida courts have found much shorter periods untimely as a matter of law. *See, e.g.*, *Kroener*, 63 So. 3d at 916 (two years untimely as matter of law); *Ro-Ro Enters.*, 1994 WL 16782171, at *4 (four months untimely as matter of law); *Ideal Mut. Ins. Co.*, 400 So.2d at 785 (two months untimely as matter of law).

Under the policy provision at issue, "[n]otice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise." *Ideal Mut. Ins. Co.*, 400 So.2d at 785; *see also Renuart-Bailey-Cheely Lumber & Supply Co. v. Phoenix of Hartford Ins. Co.*, 474 F.2d 555, 558 (5th Cir. 1973). Whether and when Clena had actual knowledge of the hurricane damage is therefore not the question. Contrary to its argument, Clena was not required to know the full extent of damage caused by Hurricane Wilma before the duty to notify was triggered. *See Kendall Lakes*, 2012 WL 266438, at *2 ("the insured must give notice of a loss that implicates a *potential* claim without waiting for the full extent of the damage to become apparent") (emphasis original).

Here, it is undisputed that Hurricane Wilma caused widespread damage throughout South Florida in October 2005, and that it allegedly caused more than $200,000 in damage to Clena's property. It is also undisputed that Clena's property manager observed downed trees on the property following the storm, and that other wind-blown debris was present there. *See* Adams Dep. at 21-22 [ECF No. 49-1]. And, there is no dispute that Clena paid a landscaping and tree trimming service nearly $4,000 to clean up debris on the property in November 2005. *See id.* at

---

[1] Clena's reliance upon *Oriole Gardens Condominiums, III v. Independence Causulty & Surety Company*, 2012 WL 718803 (S.D. Fla. Mar. 6, 2012), is misplaced. In that case, unlike here, the insured first notified its property insurer of the claim less than one month after Hurricane Wilma. In this case, Clena waited more than four years to tender such notice. The unique issue in *Oriole Gardens* was whether the policy's loss-notice condition applied to the insured's supplementation of its claim four years after it was initially submitted. Thus, that case does not control here.

24-25. "This was a considerable amount of damage, which raised a reasonable likelihood that coverage might be implicated under the policy." *See Kendall Lakes*, 2012 WL 266438, at *4.

Further, it is undisputed that Clena's property manager became aware of certain roof problems in mid-2006 and that the manager paid invoices for repairs to the roof at that time. *See* Adams Dep. at 18-19, 26-27 [ECF No. 49-1]. Beginning around April 2007, Clena retained a new property manager who was, by all accounts, totally derelict. *See* Vilarchao Dep. at 35-36 [ECF No. 46-1]. Among other problems, she was absent from the property and living abroad during her tenure, which lasted approximately two years. *See* Clena's Resp. at 14. Thus, in effect, Clena had no eyes or ears on the premises for that period of time. Had the manager been there, Clena may well have provided notice to XL more than a year before it did. Clena, through the testimony of its current manager, concedes the point: "That's probably why you don't have any insurance claims on the property, because [the prior manager] wasn't in the country." *See* Vilarchao Dep. at 35-36 [ECF No. 46-1].

Along these same lines, Clena's corporate representative stated in deposition that the Hurricane Wilma loss "should have" been reported on a subsequent application for insurance, completed in 2008. *See id.* at 36-37. The application asked whether there were any losses in the preceding five years that could give rise to any insurance claims. Clena, through the property manager, answered no. During deposition, however, a corporate representative stated that the manager should have answered yes, and that Clena's failure to report potential losses on the application can only be attributed to the then-manager's failings. *See id.* at 35. Thus, Clena has essentially conceded constructive knowledge of its claim by at least 2008, when the absentee property manager completed a new application for insurance. Yet, Clena waited almost another two years before reporting its claim. The undisputed factual record contains no explanation for this delay.

In view of these facts, none of which are in dispute, the Court finds Clena should have known of its potential claim sooner than four years after the hurricane. The Court need not pinpoint exactly when Clena's duty to notify arose; suffice it to say, notice after four years was simply too late. In this case, as in *Kendall Lakes*, no rational juror could find that Clena's notice to the insurer, coming some four years after Hurricane Wilma, was timely under the circumstances. While, as Clena argues, there is no *per se* timeliness bar for filing a notice of

claim under Florida law, it does not follow that the length of time from the occurrence to the claim is irrelevant or that it is never appropriate to find, as a matter of law, that the insured waited too long. At the hearing, counsel for Clena suggested a ruling in XL's favor would effectively establish a *per se* defense for insurers in this State. Under Florida law, however, each case must be evaluated under the specific facts and circumstances at play. Here, the Court does not decide that whenever an insured waits more than four years, notice is automatically untimely; rather, the Court decides only that, under this set of undisputed facts, Clena's notice was untimely as a matter of law.

A presumption of prejudice therefore arises and it is incumbent upon Clena to rebut this presumption in order to prevail. That is, in order to avoid summary judgment, Clena must put forth competent evidence creating a disputed issue of fact as to whether XL was in fact prejudiced or not. Clena has failed to do so here. "An insurer is prejudiced by untimely notice when 'the underlying purpose of the notice requirement was frustrated by the late notice.'" *Kendall Lakes*, 2012 WL 266438, at *4 (quoting 13 Couch on Insurance § 192:28). For example, "prejudice to the insurer results if the untimely notice substantially disadvantages the insurer's ability to (1) investigate a claim, (2) defend a claim, *or* (3) to mitigate damages through settlement or early repairs." *Kendall Lakes*, 2012 WL 266438, at *4 (emphasis supplied).

Although Clena has offered Calitu's expert opinion that it is more likely than not Hurricane Wilma caused damage to the subject property, Calitu's report and testimony do not successfully create an issue of fact as to whether Clena's late notice prejudiced XL. To the contrary, Calitu's opinions and testimony are actually corroborative of XL's prejudice. He acknowledged in deposition that anyone conducting an investigation this many years later is at a disadvantage. *See* Calitu Dep. at 242 [ECF No. 50-1]. Calitu also stated that "[i]t is difficult to isolate the roof damages to a particular hurricane event in the last few years, either Katrina, Frances, Irene, Wilma, etc." *See* Calitu Report at 4 [ECF No. 60-2]. He further explained that the only way to determine Hurricane Wilma's effect on the property vis-à-vis other named storms before and since "is to actually have the facts right after the hurricane." *See* Calitu Dep. at 59 [ECF No. 50-1]. Thus, rather than creating a disputed issue of fact as to prejudice, the testimony and findings by Clena's own expert support the notion that XL was indeed prejudiced

by Clena's untimely notice.  Because of the late notice, XL was deprived of the opportunity to properly investigate the claim at the most critical period – right after the storm.

The undisputed facts demonstrate that XL was prejudiced in another way as well.  Clena concedes that all reasonable steps to protect the subject building from further deterioration after Hurricane Wilma were not taken and that the damage worsened over time because the initial damage went unrepaired for several years.  *See* Clena's Resp. to XL's Facts at ¶¶ 50-51 [ECF No. 65]; Calitu Dep. at 59 [ECF No. 50-1].  As stated above, prejudice to the insurer results where late notice disadvantages the insurer's ability "to mitigate damages through settlement or early repairs."  *Kendall Lakes*, 2012 WL 266438, at *4.  Clena concedes it failed to mitigate damage arguably caused by Hurricane Wilma.  This is especially important because there is no way for XL to tell at this point in time what portion of Clena's claim is attributable to lack of mitigation, and whether the amount of any damage attributable to the storm (as opposed to lack of mitigation) exceeds the $24,882 wind deductible.  Put differently, XL cannot now say what amount of damage was due to a wind-event during the policy period, as opposed to deterioration in the time subsequent to the storm.  Thus, far from rebutting the presumption of prejudice here, Clena's evidence actually supports it.  Because Clena cannot create an issue of fact to rebut the presumption of prejudice, XL is entitled to summary judgment.

## CONCLUSION

For the reasons explained above, XL is entitled to final summary judgment in this case. Accordingly, it is hereby **ORDERED and ADJUDGED** that XL's Motion [ECF No. 51] is **GRANTED**.

**DONE and ORDERED** in chambers at Miami, Florida on March 26, 2012.

  
**ROBERT N. SCOLA, JR.**  
**UNITED STATES DISTRICT JUDGE**

*Copies to:*  
Designated U.S. Magistrate Judge  
Counsel of record